

**FILED**

Feb 05 2024, 9:29 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Paul L. Jefferson
McNeelyLaw LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Collin M. Mockbee
Christopher J. Mueller
Lewis Wagner LLP
Indianapolis, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

Estate of Gerald Everett
Goldsberry,

*Appellant-Defendant,*

v.

Drake Air, LLC, by its member
Brent L. Drake,

*Appellee-Plaintiff.*

February 5, 2024

Court of Appeals Case No.
23A-MI-1987

Appeal from the Morgan Superior
Court

The Honorable Brian H. Williams,
Judge

Trial Court Cause No.
55D02-2208-MI-1358

**Opinion by Judge Mathias**
Judges Tavitas and Weissmann concur.

**Mathias, Judge.**

The Estate of Gerald Everett Goldsberry ("the Estate") appeals the trial court's judgment for Drake Air, LLC, by its member Brent L. Drake ("Drake Air"), following a bench trial. The Estate raises two issues for our review, which we restate as follows:

> 1. Whether the trial court erred as a matter of law when it concluded that a bailment existed even though a third party had access to the bailed property.
>
> 2. Whether the trial court clearly erred when it concluded that the Estate had not sufficiently demonstrated that the damage to the bailed property was not the fault of the Estate.

We affirm.

## Facts and Procedural History

In 2020, Drake Air owned a Brantly B-2B helicopter. Brantly helicopters are no longer manufactured, and Drake Air engaged Gerald Goldsberry in Mooresville to service the helicopter. Goldsberry was known as "Mr. Brantly" because "he had all of the parts for Brantly helicopters in the country." Tr. Vol. 2, p. 23. On several occasions, Goldsberry's invoices to Drake Air stated that the labor for the requested services on the helicopter had been performed by Goldsberry, Bill Myrtle, or Brad Huddle. Ex. Vol. 1, pp. 4-6. Myrtle and Huddle were not paid employees of Goldsberry and they did not see themselves as agents of Goldsberry; rather, they viewed their work with Goldsberry on Brantly helicopters as simply part of their friendship with Goldsberry.

[4] In July, Drake Air delivered the helicopter to Goldsberry for routine maintenance. The helicopter was in airworthy condition upon delivery. Goldsberry accepted the delivery of the helicopter to perform the requested maintenance. Myrtle performed the maintenance, and Huddle inspected the helicopter following the maintenance.

[5] Thereafter, Goldsberry performed a test flight of the helicopter. During that flight, the engine quit and the helicopter crashed. Myrtle rushed to the scene but struggled to extract Goldsberry from the wreckage due to the heat of the resultant fire. Myrtle eventually succeeded in extracting Goldsberry, and Goldsberry stated that he had "lost power." Tr. Vol. 2, p. 42. Goldsberry died shortly afterward. An ensuing inspection by the National Transportation Safety Board ("NTSB") was unable to determine the cause of the crash.

[6] In August 2022, Drake Air filed a complaint against the Estate for the loss of the helicopter. Following a bench trial, the trial court found and concluded in relevant part as follows:

> 40. [Drake Air] delivered the [h]elicopter in good operating condition . . . to [Goldsberry's] shop. It is undisputed that the [h]elicopter was not returned . . . as [it] was destroyed in the crash. Accordingly, [under the law for mutual benefit bailments, Drake Air] has made a prima facie case of negligence and the burden shifts to the Estate to prove [Goldsberry] was not negligent.

* * *

43. There is no probative evidence addressing whether [Goldsberry] did or did not negligently inspect or perform maintenance upon the [h]elicopter. . . . [N]o probative evidence as to the particulars of his activity and the mechanical tasks performed on the helicopter has been provided by either party.

44. Without this evidence showing [Goldsberry] did not negligently inspect or perform mechanical tasks on the [h]elicopter, the Estate failed to overcome its burden.

45. This case leaves [the] court with the relevant facts as to [Goldsberry's] actions regarding the helicopter that are unfortunately unknowable, and a burden of proof upon the Defendant that demands them[] if the Defendant is to avoid liability. Accordingly, [Drake Air] is entitled to damages equal to the value of the [h]elicopter.

Appellant's App. Vol. 2, pp. 17-18. The court then found the value of the helicopter at the time of the crash to have been $50,000, and it entered judgment for Drake Air accordingly.

[7] This appeal ensued.

## Standard of Review

[8] The Estate appeals the trial court's findings and conclusions following a bench trial. Our standard of review in such appeals is well established:

We may not set aside the findings or judgment unless they are clearly erroneous. In our review, we first consider whether the evidence supports the factual findings. Second, we consider whether the findings support the judgment. Findings are clearly erroneous only when the record contains no facts to support

them either directly or by inference. A judgment is clearly erroneous if it relies on an incorrect legal standard. We give due regard to the trial court's ability to assess the credibility of witnesses. While we defer substantially to findings of fact, we do not defer to conclusions of law. We do not reweigh the evidence; rather we consider the evidence most favorable to the judgment with all reasonable inferences drawn in favor of the judgment.

*State v. Int'l Bus. Machs. Corp.*, 51 N.E.3d 150, 158 (Ind. 2016) (citations and quotation marks omitted).

## 1. Neither Myrtle's nor Huddle's access to the helicopter on the day of the crash destroyed the bailment.

On appeal, the Estate first contends that the trial court erred as a matter of law in concluding that a bailment existed between Drake Air and Goldsberry because two other people, namely, Myrtle and Huddle, had access to the helicopter on the day of the crash. As we have explained:

A bailment arises when (1) personal property belonging to a bailor is delivered into the exclusive possession of the bailee, and (2) the property is accepted by the bailee. For delivery to occur, there must be a full transfer of the property, either actually or constructively, to the sole custody of the bailee *such as to exclude both the owner of the property and others*. Acceptance of the property by the bailee may arise from an express contract or from circumstances that imply such a contract.

If a bailment is found to exist, the bailee in possession of the bailed property must exercise the degree of care commensurate with the benefit derived from the arrangement. In a mutual benefit bailment, where a bailment exists for both the bailor's and bailee's benefit, the bailee must exercise a duty of ordinary care.

> A showing by the bailor that the items were in good condition and were either returned in a damaged condition or not returned at all creates an inference that the bailee has failed to exercise the appropriate degree of care. The burden then shifts to the bailee to demonstrate that the loss, damage, or theft was not his fault.

*Nick's Packing Servs., Inc. v. Chaney*, 181 N.E.3d 1025, 1028-29 (Ind. Ct. App. 2021) (emphasis added; citations omitted). Seizing on the italicized language above, the Estate asserts that both Myrtle and Huddle had access to the helicopter, and, as such, there could be no bailment between Drake Air and Goldsberry.

[10]     On this record, we cannot agree with the Estate. A bailment is in the nature of a contract between the bailor and the bailee. *See id.* A bailor entrusts bailed property to a bailee "for a specific purpose," and, "when the purpose is accomplished[,] the bailee will return the property to the bailor." *Pittman v. Pittman*, 717 N.E.2d 627, 631 (Ind. Ct. App. 1999). And, while in custody of the bailed property, the bailee must "exercise the degree of care commensurate with" the purpose of the bailment. *Nick's Packing Servs., Inc.*, 181 N.E.3d at 1028-29.

[11]     Thus, as other jurisdictions have made more explicit, the requirement that the bailee take custody of the bailed property to the exclusion of "others"

> does not mean that . . . the bailee must be the only one who has access to the property. The bailee may allow others to access the property without destroying the bailment. *The requirement is only that the bailee have the right to exclude all persons not covered by the agreement* and to control the property.

*Cornia v. Wilcox*, 898 P.2d 1379, 1384 (Utah 1995) (quotation and original emphases omitted) (citing 8 Am. Jur. 2d *Bailments* § 78 (1980)); *see also NSK Corp. v. Oberle & Assocs., Inc.*, No. 1:09-cv-52-SEB-MJD, 2011 WL 1988809, at *3 (S.D. Ind. May 20, 2011) (concluding that a bailment existed under Indiana law because the bailee "clearly had the *right* to exclude others . . . and thus had exclusive possession" of the bailed property) (emphasis added).

[12] Here, the record is clear that Myrtle's and Huddle's access to the helicopter on Goldsberry's premises on the day of the crash was covered by the agreement between Drake Air and Goldsberry. The agreement between Drake Air and Goldsberry was for Goldsberry to take custody of the helicopter to perform routine maintenance on it. On prior occasions where Drake Air had delivered the helicopter to Goldsberry for service, Goldsberry had invoiced Drake Air for labor performed by both Myrtle and Huddle. And, on the day of the crash, Myrtle and Huddle again had access to the helicopter and provided labor toward its maintenance. Although the Estate argues that Myrtle and Huddle were not employees or agents of Goldsberry, that argument is beside the point. The question is whether Drake Air and Goldsberry contemplated that the bailment would include others such as Myrtle and Huddle, and the prior history between Drake Air and Goldsberry, along with the nature of this particular bailment being one for the service of a vehicle, makes clear that they did.

[13] Accordingly, we hold that the trial court correctly concluded that Myrtle's and Huddle's access to the helicopter on the day of the crash did not destroy the bailment between Drake Air and Goldsberry.

## 2. The trial court did not err when it concluded that the Estate failed to demonstrate that the loss of the helicopter was not Goldsberry's fault.

[14] The Estate also challenges the trial court's conclusion that the Estate failed to meet its burden to demonstrate that the loss of the helicopter was not Goldsberry's fault. Again, once the bailor demonstrates that the bailed property was delivered in good condition but then not returned by the bailee, which Drake Air did here, the burden "shifts to the bailee to demonstrate that the loss, damage, or theft was not his fault." *Nick's Packing Servs., Inc.*, 181 N.E.3d at 1028-29.

[15] The Estate argues that the trial court erred as a matter of law here when the court found that the Estate had not presented any "probative evidence" regarding whether the maintenance or inspection of the helicopter were negligently performed. Appellant's App. Vol. 2, p. 18. The Estate asserts that it did present probative evidence, namely, Myrtle's and Huddle's representations that the helicopter was airworthy prior to Goldsberry's test flight, as well as the NTSB's inability to identify a cause of the crash after an investigation. Accordingly, the Estate continues, the trial court should have shifted the burden of proof back to Drake Air to establish the Estate's liability.

[16] The trial court's full finding here is as follows:

> 43. There is no probative evidence addressing whether [Goldsberry] did or did not negligently inspect or perform maintenance upon the [h]elicopter. . . . [N]o probative evidence

as to the particulars of his activity and the mechanical tasks performed on the helicopter has been provided by either party.

*Id.* Contrary to the Estate's reading, we interpret the whole of that finding to be that the trial court found Myrtle's and Huddle's generic assertions of their own work and the helicopter's airworthiness to not be persuasive. And that assessment was well within the trial court's discretion.

[17] Further, the trial court's finding that the reason for the crash was an engine failure following the maintenance of the helicopter is supported by the record. Myrtle testified that, following his maintenance of the helicopter and Huddle's inspection, the helicopter's engine "quit" during Goldsberry's test flight. He also testified that, immediately after the crash, Goldsberry stated that he had "lost power." Tr. Vol. 2, pp. 41-42. The evidence before the trial court supports its conclusion that the helicopter went from being an airworthy vehicle at the time Drake Air delivered it to not being an airworthy vehicle while it was in Goldsberry's possession and control. The Estate's arguments to the contrary on this issue are merely requests for this Court to reweigh the evidence, which we will not do.

## Conclusion

[18] For all of these reasons, we affirm the trial court's judgment.

[19] Affirmed.

Tavitas, J., and Weissmann, J., concur.